## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LAURENCE P. SULLIVAN,**

      **Plaintiff,**

**v.**                        **Case No.:**

**NATIONAL HOCKEY LEAGUE,**

      **Defendant.**

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Laurence P. Sullivan, ("Plaintiff") by and through their undersigned counsel, brings this action against Defendant, the National Hockey League, and in support of his claim states as follows:

### JURISDICTION AND VENUE

1.      This is an action for damages for violations of 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq.

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 201 et seq.

3.      Venue is proper in the Middle District of Florida, because all of the events giving rise to these claims occurred in Hillsborough County, Florida.

### PARTIES

4.      Plaintiff Laurence P. Sullivan ("Plaintiff Sullivan") is a resident of Hillsborough County, Florida.

5.      Defendant is a foreign corporation that operates as a professional hockey league services in Tampa, in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

6.      Plaintiff has satisfied all conditions precedent, or they have been waived.

7.      Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

8.      Plaintiff requests a jury trial for all issues so triable.

9.      Plaintiff engaged in protected activity under Section 1981.

10.     Plaintiff's protected activity was to oppose the blatant and ongoing racism in Defendant's workplace for African-American co-workers who are a member of a protected class of persons under Section 1981.

11.     Plaintiff is an employees whose rights to contract for employment, and enjoy the benefits of employment, are protected under Section 1981.

12.     Under Section 1981, Defendant is an employer prohibited from interfering with any employee's contractual right to enjoy the same benefits, privileges, terms, and conditions of employment that all other employees of Defendant otherwise enjoy, regardless of the employee's race and/or color.

13.     At all times material hereto, Defendant acted with malice and reckless disregard for Plaintiffs' protected rights under Section 1981.

14.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Title VII.

15.     At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of Title VII.

## FACTS

16.     Plaintiff Laurence P. Sullivan was employed by Defendant as an Off Ice Official for Defendant at the Tampa Bay Lightning games in Tampa, Florida, during the relevant period of approximately August 2013 to February 26, 2020.

17.     Plaintiff is a Caucasian male whose daughter is African-American and whose grandson is bi-racial, being of Latino and African-American descent.

18.     As part of his duties, Plaintiff would wear a headset that connected the Off Ice Officials, Plaintiff's supervisor, and other personnel of Defendants, to communicate.

19.     In approximately August 2013, Ron Brace (Brace) became the permanent supervisor of all Plaintiff as well as his co-worker, Pat DeLorenzo, Jr (DeLorenzo).

20.     Ron Brace and DeLorenzo, were also included in the communications system for the Off Ice Officials.

21.     DeLorenzo made negative racial comments about the African-American veteran, Sonya Bryson, that sings the national anthem at Tampa Bay Lightning games.

22.     DeLorenzo also regularly made racially offensive comments about African-Americans in general, referring to all African-Americans as "nigg**s."

23.     DeLorenzo, at work in the booth with other co-workers around to hear, told Plaintiff that "chocolate" was his code word for "nigg**s."

24.     Plaintiff, as well as his supervisor Brace, and other NHL officials and crew were exposed to DeLorenzo's intentionally racist comments and failed to take any remedial action whatsoever.

25.     Plaintiff opposed the racially discriminatory comments of DeLorenzo, and reported his complaints to his supervisor, Brace, requesting that the behavior be stopped.

26.    Brace failed to take any action as to DeLorenzo's racist comments for over five years.

27.    The racial comments were so offensive and so pervasive that Plaintiff began recording DeLorenzo's racial comments at work.

28.    In December 2019, Brace tried to terminate a different co-worker, James Watkins (Watkins), for allegedly not getting along with DeLorenzo.

29.    Patrice Distler, (Distler), Defendant's Vice President of Human Resources, and Kate Watson, (Watson), Defendant's Senior Counsel, met with Watkins.  In this meeting, Plaintiff Watkins disputed the allegation and reiterated that he found DeLorenzo's conduct offensive. Watkins disclosed all of DeLorenzo's racially offensive comments, along with other offensive comments, and named Plaintiffs Sullivan and Walkowiak as witnesses.

30.    Distler and Watson contacted Plaintiff on or about December 30, 2019, in regards to Watkins' complaints about DeLorenzo and Brace's failure to take action.

31.    Plaintiff expressed fear of speaking out against DeLorenzo due to Brace's ongoing protection of him despite previous complaints and, upon information and belief, due to a previous female Off Ice Official from another city that was terminated by Defendant shortly after reporting sexual harassment at work.

32.    Brace had previously told Plaintiff, and others, that if the NHL received complaints, they would find a way to terminate them, and also boasted that due to his close relationship with Distler, she would fire anyone he wanted.

33.    Distler and Watson told Plaintiff that he would be protected under the Defendant's whistle-blower policy and would not be retaliated against due to Defendant's allegedly strong anti-retaliation policy.

4

34.     Based on Distler and Watson's assertions of protection from anti-retaliation, and pursuant to their direction, Plaintiff provided directly to Watson and Distler six recordings of DeLorenzo's racially discriminatory behavior including his use of the word "nigg**r" along with videos of DeLorenzo making other comments such as "once you go black, you never go back," asking someone if they wanted "head," and that others were "internally retarded."

35.     Despite Distler and Watson's assurances, Plaintiff was not protected by Defendant's supposed anti-retaliation policy and instead was the target of a proactive, vengeful, campaign to solicit a pre-textual reason to terminate him for reporting the offensive and discriminatory behavior of DeLorenzo and the protection of that behavior by Brace.

36.     Baker instructed the interim supervisor of Plaintiff to forward any email or text message from Plaintiff directly to Baker.

37.     Watson wrote to Plaintiff and instructed him to "destroy any and all videos that you have recorded in the workplace." See Exhibit A.

38.     On or about January 2, 2020, Defendant finally terminated DeLorenzo and Brace.

39.     Plaintiff was not considered for any position held by DeLorenzo or Brace.

40.     Presumably coming up empty with Baker's instructions to compile all of Plaintiff's emails and text messages to his interim supervisor, Defendant apparently went back to DeLorenzo to find any comment of Plaintiff's that could be painted as discrimination by Defendant and used as a means to carry out its unveiled threats of retaliation for reporting discriminatory behavior.

41.     Almost two months after terminating DeLorenzo and Brace, on or about February 26, 2020, Defendant terminated Plaintiff for allegedly being a part of a 2016 group message thread of DeLorenzo's.

42.     Defendant did not investigate the text messages of any other Off Ice Officials other than the Plaintiff and the two other Off Ice Officials that corroborated DeLorenzo and Brace's discriminatory conduct.

43.     Defendant did nothing to stop the racially discriminatory comments that were broadcast to its employees and crew every night on its communication system and in the booth shared by the Off Ice Officials.

44.     Instead, only after being confronted with video evidence of the wrongful behavior, Defendant terminated DeLorenzo and Brace, and then terminated the whistleblowers, including Plaintiff. Defendant then promoted Gary Reilly, another NHL official that heard – and stayed silent – for all of DeLorenzo's racial slurs.

45.     Plaintiff was terminated due to his opposition to DeLorenzo's racist and offensive behavior, as well as reporting the racist and offensive behavior on multiple occasions and participating in the investigation of those complaints.

## COUNT I – 42 U.S.C. § 1981 VIOLATION
### (RACE DISCRIMINATION)

46.     Plaintiff realleges and readopts the allegations of Paragraphs 1-13 and 16-45 of this Complaint, as though fully set forth herein.

47.     Plaintiff opposed the racial discrimination of members of a protected class of persons under Section 1981.

48.     Plaintiff was subjected to disparate treatment by Defendant, based solely on Plaintiff's opposition to the racially discriminatory work environment.

49.     The foregoing actions constitute unlawful discrimination, in violation of Section 1981.

50.     Defendant's actions were willful and done with malice.

6

51.    As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiff, Plaintiff has suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

52.    Plaintiff was injured due to Defendant's violations of Section 1981, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

(a)    A jury trial on all issues so triable;

(b)    That process issue and that this Court take jurisdiction over the case;

(c)    Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

(d)    Compensatory damages, including emotional distress, allowable at law;

(e)    Punitive damages;

(f)    Reinstatement of Plaintiff to a position comparable to his prior position, or in the alternative, front pay;

(g)    Prejudgment interest on all monetary recovery obtained;

(h)    All costs and attorney's fees incurred in prosecuting these claims; and

(i)    For such further relief as this Court deems just and equitable.

## COUNT II — 42 U.S.C. § 1981 VIOLATION
### (RETALIATION)

53.    Plaintiffs reallege and readopt the allegations of Paragraphs 1-13 and 16-45 of this Complaint, as though fully set forth herein.

54.     Plaintiff reported racial discrimination of members of a protected class of persons under Section 1981.

55.     By complaining about the offensive racial remarks and participating in the investigation of those remarks, Plaintiff engaged in protected activity under Section 1981.

56.     Defendant retaliated against Plaintiff for engaging in protected activity under Section 1981 by terminating Plaintiff's employment.

57.     Defendant's actions were willful and done with malice.

58.     Defendant's retaliation was based solely on Plaintiff's exercise of their right to resist and oppose unlawful discrimination and harassment, which is protected under Section 1981.

59.     As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiff, Plaintiff has suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

60.     Plaintiff was injured due to Defendant's violations of Section 1981, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

(a)     A jury trial on all issues so triable;

(b)     That process issue and that this Court take jurisdiction over the case;

(c)     Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

(d)     Compensatory damages, including emotional distress, allowable at law;

(e)     Punitive damages;

(f)     Reinstatement of Plaintiff to a position comparable to his prior position, or in the alternative, front pay;

(g)     Prejudgment interest on all monetary recovery obtained;

(h)     All costs and attorney's fees incurred in prosecuting these claims; and

(i)     For such further relief as this Court deems just and equitable.

## COUNT III – TITLE VII VIOLATION
### (RACE AND SEX DISCRIMINATION)

61.     Plaintiff realleges and readopts the allegations of paragraphs 1-8 and 14-45 of this Complaint, as though fully set forth herein.

62.     Plaintiff was subjected to disparate treatment by Defendant, based solely on Plaintiff's opposition to the racially and sexually discriminatory work environment.

63.     Defendant knew or should have known of the disparate treatment suffered by Plaintiff, and failed to intervene or to take prompt and effective remedial action in response.

64.     Defendant's actions were willful and done with malice.

65.     Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

a)     A jury trial on all issues so triable;

b)     That process issue and that this Court take jurisdiction over the case;

c)     An injunction restraining continued violation of Title VII by Defendant;

d)     Compensation for lost wages, benefits, and other remuneration;

e)     Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

9

f)      Any other compensatory damages, including emotional distress, allowable at law;

g)      Punitive damages;

h)      Prejudgment interest on all monetary recovery obtained.

i)      All costs and attorney's fees incurred in prosecuting these claims; and

j)      For such further relief as this Court deems just and equitable.

## COUNT IV – TITLE VII RETALIATION

66.    Plaintiff realleges and readopts the allegations of paragraphs 1-8 and 14-45of this Complaint, as though fully set forth herein.

67.    Plaintiff reported race and sex discrimination on behalf of members of those protected classes under Title VII and participated in the investigation of those discrimination charges.

68.    Plaintiff exercised or attempted to exercise his rights under Title VII, thereby engaging in protected activity under Title VII.

69.    Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by terminating Plaintiff's employment.

70.    Defendant's actions were willful and done with malice.

71.    In terminating Plaintiff's employment, Defendant took material adverse action against Plaintiff.

72.    Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

***WHEREFORE***, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) That this Court enter a declaratory judgment, stating that Defendant retaliated against Plaintiff for exercising his rights under Title VII;

d) That this Court enter an injunction restraining continued violation of Title VII by Defendant;

e) Compensation for lost wages, benefits, and other remuneration;

f) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, seniority rights, and all fringe benefits;

g) Front pay;

h) Any other compensatory damages, including emotional distress, allowable at law;

i) Punitive damages;

j) Prejudgment interest on all monetary recovery obtained.

k) All costs and attorney's fees incurred in prosecuting these claims; and

l) For such further relief as this Court deems just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff demands trial by jury as to all issues so triable.

Dated this 18th day of November, 2020.

                    Respectfully submitted,

                    */s/ Brandon J. Hill*

                    **BRANDON J. HILL**
                    Florida Bar Number: 0037061
                    Direct Dial: 813-337-7992
                    **AMANDA E. HEYSTEK**
                    Florida Bar Number: 0285020
                    Direct Dial: 813-379-2560
                    **WENZEL FENTON CABASSA, P.A.**
                    1110 N. Florida Avenue, Suite 300
                    Tampa, Florida 33602
                    Main Number: 813-224-0431
                    Facsimile: 813-229-8712
                    Email: bhill@wfclaw.com
                    Email: aheystek@wfclaw.com
                    Email: aketelsen@wfclaw.com
                    **Attorneys for Plaintiffs**