UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO. 8:20-cv-2720-TPB-TGW

LAURENCE P. SULLIVAN,

    Plaintiff,

    v.

NATIONAL HOCKEY LEAGUE,

    Defendant.

**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND <u>INCORPORATED MEMORANDUM OF LAW</u>**

Defendant, National Hockey League ("Defendant" or "NHL"), hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for entry of an Order dismissing Plaintiff Laurence Sullivan's ("Plaintiff" or "Sullivan") First Amended Complaint ("FAC").[1] In support thereof, Defendant states as follows:

## PRELIMINARY STATEMENT

This case arises out of the NHL's decision to terminate Plaintiff's employment after learning of his participation in a group text chain with other NHL employees (who were also terminated) that included Sullivan's derogatory reference to African-American physical features and other racially insensitive comments. Leaving aside the good faith, legitimate, reason for his termination (*i.e.*, his own misconduct), the Court can and should dismiss the case for failure to state a claim because the FAC is plainly deficient.[2] For the reasons stated below, Sullivan has failed to plead a retaliation claim because he has not alleged (and could not allege) facts that would establish that he engaged in "protected activity" under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), or the Florida Civil Rights Act of 1992 ("FCRA"). The FAC

---

[1] Citations to paragraphs in the FAC (ECF No. 12) are hereinafter identified as "FAC ¶".
[2] The complaint originally filed in this action (ECF No. 1) purported to set forth claims of race and sex discrimination. Those claims were dropped from the FAC, leaving only the retaliation causes of action.

thus fails to state a claim upon which relief can be granted and should be dismissed in its entirety.

As discussed in greater detail below, the first of three *required* elements of a retaliation claim is that the plaintiff engaged in protected activity by opposing conduct that he had a good faith, objectively reasonable belief constituted unlawful discrimination. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213-14 (11th Cir. 2008). Courts have repeatedly made clear that not every complaint amounts to protected activity, and have rejected retaliation claims where the underlying complaint was not objectively reasonable.

Here, the flaw in the FAC is obvious and fatal. Sullivan, a white male, does not allege (because he cannot) that he was discriminated against (or that he complained about discrimination) on the basis of his race. Sullivan also does not assert that any other NHL employee was subjected to a hostile work environment on the basis of his or her race – either by virtue of the comments attributed to his co-worker (Patrick DeLorenzo, Jr.) or otherwise – much less that he complained on any such employee's behalf. Indeed, the FAC does not even allege (nor could it) that, during the relevant period, the NHL employed any African-American employees at Amalie Arena, where Tampa Bay Lightning games are played and where Sullivan worked. In short, there is no allegation that Plaintiff complained

about discrimination experienced by himself or by any other employee. The FAC must therefore be dismissed.

## RELEVANT BACKGROUND[3]

Sullivan is a white male and was employed by the NHL as an Off-Ice Official on a part time, hourly basis from 1997 until his termination on February 26, 2020. (FAC ¶¶ 16-17.) He was part of a team of approximately twenty individuals who are employed by the NHL to fulfill game related tasks at Amalie Arena. (*See* generally, *id*., ¶¶ 16, 18, 26.)

### I.   Plaintiff's Allegations of Workplace Misconduct

According to Sullivan, a co-worker, DeLorenzo, regularly made racially offensive comments about "African-Americans in general" in the presence of other NHL co-workers. (*Id*., ¶¶ 22, 24.) The FAC alleges three examples of this conduct: (1) on some unspecified date DeLorenzo made "negative racial comments" about an artist that sang the National Anthem at Amalie Arena (*id*., ¶ 21); (2) on December 14, 2019, DeLorenzo made racial slurs about African-Americans "with other co-workers around to hear" (*id*., ¶ 23); and (3) "during the month of November and December, 2019," DeLorenzo made additional racial slurs and inappropriate comments at work (*id*., ¶ 35).

---

[3] For purposes of this Motion only, the NHL accepts as true all well-pled factual allegations of the FAC, but does not waive its rights to challenge the truth of the allegations asserted and/or to assert any and all applicable affirmative defenses if this Motion is denied in part or in whole.

The FAC does not allege that DeLorenzo made any racially charged comments directed at or about African-American NHL employees; or that any of the co-workers present during DeLorenzo's comments were African-American; or even that the NHL employs any African-American employees at Amalie Arena who heard DeLorenzo's comments. (*See e.g., id*., ¶¶ 22-26, 35.) There are no allegations that anyone (including Plaintiff) experienced a hostile work environment on the basis of his or her race.

## II.    The NHL's Investigation of DeLorenzo's Conduct

The FAC alleges that in December 2019 another Off-Ice Official disclosed DeLorenzo's offensive comments to the NHL's Vice President of Human Resources (Patrice Distler) and an NHL in-house attorney (Kate Watson). (*Id.*, ¶¶ 27-29.) During that discussion, the employee identified Sullivan as a witness to DeLorenzo's purported conduct. (*Id.*, ¶ 29.)

As part of the NHL's investigation into DeLorenzo's conduct, Sullivan was interviewed by Distler and Watson on December 30, 2019, during which he described the offensive comments. (*Id.*, ¶¶ 30, 34.) A mere three (3) days later, on January 2, 2020, the NHL promptly terminated DeLorenzo and DeLorenzo's supervisor for violating NHL policies. (*Id.*, ¶ 39.)

### III. Plaintiff's Allegations of Retaliation

Plaintiff continued to work as an Off-Ice Official for nearly two (2) months. (*Id.*, ¶¶ 42-44.)  In late February, 2020 the NHL became aware that Plaintiff had been an active participant in a group text message chain that included DeLorenzo and others.  (*Id.*)  In the text message chain, the participants made racially insensitive comments, including Sullivan, who made derisive comments about the appearance of African-American males' physical features.  Plaintiff was terminated on February 26, 2020 because of his active participation in the text message chain.  (*Id.*, ¶ 42.)

The FAC asserts claims of retaliation (Counts I-III) pursuant to Section 1981 (*id.*, ¶¶ 49-56), Title VII (*id.*, ¶¶ 57-63); and the FCRA (*id.*, ¶¶ 64-69).  These claims rely on the assertion that Sullivan was terminated for having reported alleged race discrimination.  The FAC also alleges in conclusory fashion (as part of the Title VII and FCRA claims) that Sullivan was retaliated against for reporting "sex discrimination."  (*Id.*, ¶¶ 58, 65.) However, the FAC provides no factual support for that allegation.

## ARGUMENT

### I. LEGAL STANDARDS APPLICABLE TO A RULE 12(b)(6) MOTION TO DISMISS

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is

entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "plaintiff must provide enough factual allegations to raise a right to relief above the speculative level and to indicate the presence of the required elements." *United States v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Orl-31DAB, 2012 WL 921147, at *2 (M.D. Fla. Mar. 19, 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007)). "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Halifax*, 2012 WL 921147, at *2 (citing *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

The Supreme Court explained that although a complaint need not contain detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Twombly,* 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the plaintiff is entitled to relief. *Id*. In other words, a plaintiff must go beyond the "conclusory" and must offer "some further factual enhancement" to "enter the realm of plausible liability." *Twombly*, 550

U.S. at 557 n.5.  To sufficiently plead a claim, a plaintiff must allege sufficient facts that plausibly establish each element of the cause of action.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001) ("Thus, at a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory.").

Here, no construction of the factual allegations in the FAC can support a claim for relief under Title VII, Section 1981, or FCRA.  Accordingly, Plaintiff's FAC should be dismissed in its entirety with prejudice.

## II. PLAINTIFF'S RETALIATION CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

### A. <u>The Legal Standards For Pleading Retaliation</u>

To prevail on a claim of retaliation under any of the statutes in the FAC, a plaintiff must establish in the first instance that he engaged in statutorily protected activity, he suffered an adverse employment action, and there is a causal link between the protected activity and the adverse action.  *Siddiqui v. NetJets Aviation, Inc.*, 773 F. App'x 562, 566 (11th Cir. 2019), *cert. denied*, No. 19-500, 2020 WL 1325845 (Mar. 23, 2020) (applying same elements under Section 1981 and Title VII); *Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163 (Fla. 4th DCA 2017) (applying same elements under FCRA).  The Eleventh Circuit and this Court have

made clear that facts supporting each element of a retaliation claim must be sufficiently pled to survive a Rule 12(b)(6) motion to dismiss. *See Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018) (affirming Rule 12(b)(6) motion to dismiss ADEA retaliation claim where plaintiff could not establish each element of her claim); *Covarrubias v. Anthrex, Inc.,* No. 2:19-cv-553-TPB-MRM, 2020 WL 377005, at *3 (M.D. Fla. Jan. 23, 2020) (dismissing retaliation claim where plaintiff had "not pled sufficient facts to establish" each element of a retaliation claim under Title VII and FCRA) (Barber, J.); *Wimbley v. Doyon Sec. Servs.*, LLC, No. 14-cv-20935, 2014 WL 4376148, at *8 (S.D. Fla. Sep. 3, 2014) (granting Rule 12(b)(6) motion to dismiss Title VII retaliation claim where plaintiff failed to "sufficiently allege[] that he opposed an unlawful discrimination practice . . . .").

Plaintiff has not alleged (because he cannot allege) facts demonstrating that he engaged in protected activity. Therefore, dismissal is warranted.

### B. Plaintiff Did Not Engage In Protected Activity.

In order to establish that he engaged in statutorily protected activity, a plaintiff must allege that he "explicitly or implicitly communicat[ed] a belief that [a] practice constitutes unlawful employment discrimination." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016). However, not every

8

communication of such a belief is protected. As the Eleventh Circuit observed in *Butler v. Alabama Department of Transportation*, *supra*:

> We previously have recognized that a plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

536 F.3d at 1213 (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)); *see also David v. Baycare Health Sys.*, No. 8:19-cv-02136-T-60JSS, 2019 WL 6842085, at *3 (M.D. Fla. Dec. 16, 2019) (granting Rule 12(b)(6) motion to dismiss whistleblower retaliation claim and explaining that even though the plaintiff "pled a reasonable, good faith belief that Defendant['s conduct was] improper – or perhaps even unethical – she has not pled facts that, if true, allow for a reasonable, good faith belief that Defendant has violated the law . . . .") (Barber, J.); *Wimbley*, 2014 WL 4376148, at *5 (explaining that "to qualify as 'protected activity', a plaintiff's opposition must be to a 'practice made unlawful by [Title VII] . . . [t]hat is, the plaintiff must oppose the

9

unlawful practice itself, not some attendant consequence or reaction to that practice.'").

Applying this standard, courts have rejected retaliation claims where the plaintiff alleged that (s)he had complained about discriminatory comments made in the workplace but where the alleged comments were insufficient to give rise to a reasonable belief that there was an unlawful hostile work environment.

In *Butler*, for example, the court rejected a claim that rested on the contention that the plaintiff (herself an African-American) had been retaliated against for reporting racial epithets used by a co-worker.  The Eleventh Circuit held that even assuming the plaintiff had a good faith belief that the comments amounted to an unlawful employment practice, it was "objectively unreasonable" for plaintiff to have believed that the conduct was sufficient to establish a hostile work environment on the basis of race.  536 F.3d at 1214.

More recently, a court in this District found a retaliation claim insufficient on similar grounds in *Johnson v. Family Practice & Injury Center, Inc.*, 437 F. Supp. 3d 1108 (M.D. Fla. 2020).  There, an African-American plaintiff brought discrimination and retaliation claims against her former employer, claiming, among other things, that she had been terminated after complaining that a co-worker had made "racially-charged comments" on two occasions.  The Court assumed that the plaintiff had subjectively believed that the conduct amounted to

10

discrimination, but nevertheless dismissed the claim because it was not objectively reasonable.

The Court in *Johnson* observed that a subjective, good-faith belief "must be measured against controlling substantive law to determine its reasonableness:

> Indeed, '[w]here binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable.'"

437 F. Supp. 3d at 1124 (quoting *Butler*, 536 F.3d at 1214). The court went on to find that even though at least one of the alleged comments was "an uncalled for, ugly racist statement," *id*., at 1127, the comments, taken together, did not come "close enough" to establishing a violation, *id*., at 1131. Accordingly, the plaintiff did not have an "objectively reasonable" basis for believing that they created an unlawful hostile environment. The Court thus held that the plaintiff had not established a *prima facie* case of retaliation. *Id*., at 1133-34.

Here, even assuming, *arguendo*, that Sullivan believed that DeLorenzo's conduct was unacceptable, the FAC has a fatal flaw, *i.e.*, it does not allege that the conduct Sullivan reported (even arguably) created a hostile work environment for any employee <u>based on his or her race</u>. *See Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018) (hostile work environment discrimination requires proof that employee "was subjected to unwelcome harassment . . . based

11

on her race"). Sullivan does not even allege that the NHL employed African-Americans at Amalie Arena – much less that African-Americans working there were affected by DeLorenzo's racial comments.[4]

For this reason, this case is considerably more straightforward than either *Butler* or *Johnson*. Both of those cases involved retaliation claims by African-American plaintiffs who alleged that they had been subjected to (and had complained about) a racially hostile work environment. In those cases, the courts necessarily had to consider whether the conduct complained of had been sufficiently "severe or pervasive" to support the plaintiffs' claims that they had engaged in protected activity when they reported the conduct.

Here, by contrast, there is no allegation that any conduct affected the working conditions of any African-American employee. Moreover, the controlling law makes clear that under these circumstances neither Sullivan himself nor any other Caucasian employee could claim that they were unlawfully discriminated against on the basis of their race. *See Baker v. Kelly Smith, LLC*, 977 F. Supp. 2d 1231, 1237 (M.D. Fla. 2013) (dismissing a white plaintiff's Section 1981 claims pursuant to Rule 12(b)(6) because she did "not allege that she endured

---

[4] The fact that Sullivan asserts in one (1) conclusory and vague sentence that DeLorenzo's conduct affected "Defendant's workplace for African-American co-workers" (*id.*, ¶ 10) does not salvage his claim because, as discussed above, he has not provided any factual allegation to support that conclusion. *See Iqbal*, 556 U.S. at 678-679 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

12

discrimination directed against her because of her race or her association with a racial minority"); *Jackson v. Deen*, 959 F. Supp. 2d 1346, 1354 (S.D. Ga. 2013) (dismissing white plaintiff's Title VII race discrimination claim based on racial comments made against African-American employees and explaining that the statute "seeks to prevent individuals from being discriminated against by their employers with respect to the terms and conditions of their employment"); *Cochran v. Five Points Temps., LLC*, 907 F. Supp. 2d 1260, 1270-71 (N.D. Ala. 2012) (same).

The FAC nowhere alleges that DeLorenzo's conduct created a hostile work environment for any employee based on his or her race. Indeed, the only reference to any African-American is to an individual who sang the National Anthem at Amalie Arena. (FAC ¶ 21.) The FAC does not even allege that the NHL employed the anthem singer; much less that she ever heard the offensive comments or was informed that they had been made; or that her working environment was affected in any way.

The Eleventh Circuit commented in *Little v. United Technologies*, *supra*, that "not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." 103 F.3d at 959 (quoting *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir. 1978)). That observation

13

is particularly applicable here. Sullivan has not alleged facts that would come close to establishing that the conduct he purports to have reported violated Title VII, Section 1981 or FCRA and as such, his retaliation claims must fail.[5]

## CONCLUSION

For the foregoing reasons, this Court should dismiss the First Amended Complaint in its entirety with prejudice.

## Local Rule 3.01(g) Certification

Counsel for Defendant has conferred with counsel for the Plaintiff by telephone regarding this motion and the parties do not agree on the resolution of all or part of the motion.

February 25, 2021

Respectfully submitted,

*/s/ Tulio D. Chirinos*
Tulio D. Chirinos
Florida Bar No. 1022468
Jurate Schwartz
Florida Bar No. 0712094
Proskauer Rose LLP
2255 Glades Road, 421 Atrium
Boca Raton, FL 33431
Telephone: (561) 241-7400
Facsimile: (561) 241-7145
tchirinos@proskauer.com
jschwartz@proskauer.com

---

[5] As noted at p. 5, *supra*, the FAC also purports to state a claim that Sullivan was retaliated against for reporting sex discrimination. The analysis set forth above applies (with equal or greater force) to this aspect of Sullivan's claim. The FAC utterly fails to allege facts that would support a claim that he was retaliated against for reporting alleged sex discrimination.

florida.labor@proskauer.com

*and*

Joseph Baumgarten (*Pro Hac Vice*)
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
212.969.3002 (p)
212.969.2900 (f)
jbaumgarten@proskauer.com

*Attorneys for Defendant*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 25, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: */s/ Tulio D. Chirinos*
Tulio D. Chirinos
Florida Bar No. 1022468
PROSKAUER ROSE LLP
2255 Glades Road, 421 Atrium
Boca Raton, FL 33431
tchirinos@proskauer.com

*Attorney for Defendant*