## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LAURENCE P. SULLIVAN,**

      **Plaintiff,**

**v.**                        **Case No.: 8:20-cv-02720-TPB-TGW**

**NATIONAL HOCKEY LEAGUE,**

      **Defendant.**

_____/

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>**

## BRIEF OVERVIEW

The Court should deny Defendant's Motion to Dismiss because Plaintiff's well-pleaded Amended Complaint plausibly states a claim for retaliation against Defendant under 42 U.S.C. § 1981, Title VII, and the Florida Civil Rights Act. (Doc. 12).

Contrary to Defendant's Motion, which improperly relies almost exclusively on cases decided at summary judgment, Plaintiff's allegations must be accepted as true. Simply put, Plaintiff reported to Defendant that on December 14, 2019, his supervisor made vile and racially-explicit comments about African-Americans, including use of the "N" word. (Amended Complaint, ¶¶ 22-23, 35). But this was no isolated incident. Plaintiff's supervisor "regularly made racially offensive comments about African-Americans in general, referring to African-Americans as nigg**s." (Amended Complaint, ¶ 22).

Worse still, and as further explained in the Amended Complaint, "during the months of November and December of 2019, [Plaintiff] reported [the] complaints to his supervisor, Brace, requesting that Defendant put a stop to DeLorenzo's racist comments and behavior at work. Defendant and Brace did nothing to stop DeLorenzo's racism for several years. The racial comments became so offensive and so pervasive that in November and December of 2019 Plaintiff began recording by video and audio DeLorenzo's racial comments at work, including at the Amalie Arena where the Tampa Bay Lightning play, during hockey games during the month of December 2019." (Amended Complaint, ¶¶ 25-26).

The Amended Complaint goes on to explain the following:

Despite all of this, on or about December 30, 2019 Distler and NHL Attorney Watson told Plaintiff that he would be protected under the Defendant's whistle-blower policy and would not be retaliated against for engaging in a protected activity due to Defendant's allegedly strong anti-retaliation policy if he reported the specifics of DeLorenzo's racist and offensive conduct.

Based on Distler and NHL Attorney Watson's assertions of protection from anti-retaliation, on December 30, 2020, Plaintiff provided directly to NHL Attorney Watson and Distler six recordings of DeLorenzo's racially discriminatory behavior, all of which occurred during the month of November and December 2019, including his use of the word "nigg**r" along with videos of DeLorenzo making other comments such as "once you go black, you never go back," asking someone if they wanted "head," and that others were "internally retarded" during hockey games at Amalie Arena.

(Doc. 12, Amended Complaint, ¶¶ 34-35).

The remaining adverse employment action and causation elements required of Plaintiff's retaliation claim are satisfied by the close proximity of his termination to his protected activity. For example, the Amended Complaint alleges that "…on or about February 26, 2020, less than two months after he engaged in protected activity, Defendant terminated Plaintiff for pretextual reasons. Specifically, Defendant terminated Plaintiff for his alleged involvement in a 2016 group message thread of DeLorenzo's. Defendant did not investigate the text messages of any other Off Ice Officials, other than the Plaintiff and the two other Off Ice Officials that corroborated DeLorenzo and Brace's discriminatory conduct." (Doc. 12, Amended Complaint, ¶¶ 42-44).

In sum, Plaintiff alleges he engaged in multiple instances of protected activity, including on December 30, 2019, and that he was fired less than two months later. Plaintiff's retaliation claim is in the middle of the plate. This is not a borderline retaliation case. Plaintiff states a claim. Thus, Plaintiff respectfully asks that this Honorable Court deny Defendant's Motion.

## SUPPORTING FACTS FROM FIRST AMENDED COMPLAINT

1.      Plaintiff was terminated due to his opposition to and engaging in protected activity related to DeLorenzo's racist and offensive behavior, as well as reporting the racist and offensive behavior on multiple occasions and participating in the investigation of those complaints. (Doc. 12, Amended Complaint, ¶ 48).

2.      Plaintiff is a Caucasian male whose daughter is African-American and whose grandson is bi-racial, being of Latino and African-American descent. (Doc. 12, Amended Complaint, ¶ 17).

3.      DeLorenzo also regularly made racially offensive comments about African-Americans in general, referring to African-Americans as "nigg**s." (Doc. 12, Amended Complaint, ¶ 22). On December 14, 2019, DeLorenzo, at work in the booth with other co-workers around to hear, told Plaintiff that "chocolate" was his code word for "nigg**s." (Doc. 12, Amended Complaint, ¶ 23).

4.      Plaintiff opposed the racially discriminatory comments of DeLorenzo, and for several years, including during the months of November and December of 2019, reported his complaints to his supervisor, Brace, requesting that Defendant put a stop to DeLorenzo's racist comments and behavior at work. Defendant and

Brace did nothing to stop DeLorenzo's racism for several years. (Doc. 12, Amended Complaint, ¶ 25)

5.      The racial comments became so offensive and so pervasive that in November and December of 2019 Plaintiff began recording by video and audio DeLorenzo's racial comments at work. (Doc. 12, Amended Complaint, ¶ 26).

6.      In relation to Brace's attempt to terminate a different co-worker, Watkins, Patrice Distler, (Distler), Defendant's Vice President of Human Resources, and Kate Watson (NHL Attorney Watson), Defendant's Senior Counsel, met with Plaintiff and Watkins. In this meeting, Plaintiff reiterated that he found DeLorenzo's conduct offensive. This is especially true because Plaintiff's daughter is African-American and his grandson is bi-racial. (Doc. 12, Amended Complaint, ¶¶ 27-28).

7.      In December of 2019 Watkins disclosed all of DeLorenzo's racially offensive comments, along with other offensive comments, and named Plaintiff Sullivan as a witness. Distler and NHL Attorney Watson contacted Plaintiff on or about December 30, 2019. (Doc. 12, Amended Complaint, ¶¶ 29-30).  Plaintiff told Distler and NHL Attorney Watson he was concerned about being terminated by Defendant in retaliation for reporting DeLorenzo's racist and offensive conduct. (Doc. 12, Amended Complaint, ¶ 31).

8.      Distler and NHL Attorney Watson told Plaintiff that he would be protected under the Defendant's whistle-blower policy and would not be retaliated against if he reported the specifics of DeLorenzo's racist and offensive conduct. So,

Plaintiff did. (Doc. 12, Amended Complaint, ¶¶ 34-35). Despite Distler and NHL Attorney Watson's assurances, Plaintiff was not protected by Defendant's supposed anti-retaliation policy and instead was the target of a proactive, vengeful, campaign by Defendant to terminate him for reporting the offensive and discriminatory behavior of DeLorenzo. (Doc. 12, Amended Complaint, ¶ 36).

9.      Defendant instructed the interim supervisor of Plaintiff to forward any email or text message from Plaintiff for collection. NHL Attorney Watson instructed Plaintiff to "destroy any and all videos that you have recorded in the workplace." And finally resorting to engaging with the then terminated DeLorenzo for old text messages. (Doc. 12, Amended Complaint, ¶¶ 37-38, 41).

10.      On or about February 26, 2020, less than two months after he provided the video recordings of DeLorenzo's racist comments, Defendant terminated Plaintiff for pretextual reasons, ultimately having to rely on a four year old group text chain from DeLorenzo. (Doc. 12, Amended Complaint, ¶ 42).

## MEMORANDUM OF LAW

## I.      Legal Standard.

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. *James Nathaniel Douse v. Neal Communities of Southwest Florida, Inc.* No. 8:20-CV-1587-T-35TGW, 2021 WL 1053710, at *2 (M.D. Fla. Mar. 15, 2021) (citing to *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.*, 711 F.2d 989, 995 (11th Cir. 1983). At the motion to dismiss stage, all allegations are

accepted as true and viewed in the light most favorable to the Plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

## II.   **Argument.**

Plaintiff's Amended Complaint seeks recovery for retaliation under Title VII, Sections 1981, and the Florida Civil Rights Act. In this Circuit, Title VII and Section 1981 claims have the same legal elements when the claims are based on the same set of facts.[1] The same is true for claims brought under the FCRA.[2] Here, all claims turn on the same set of facts.

Under Title VII[3] an employer is prohibited from retaliating against an employee "because he has opposed any practice made an unlawful employment practice … or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Smith v. City of Atl. Beach*, No. 3:18-CV-1459-J-34MCR, 2020 WL 708145, at *12 (M.D. Fla. Feb. 12, 2020) (denying

---

[1] *See, e.g., Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008); *see also Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805-806 (11th Cir. 1995).

[2] Since the FCRA essentially mirrors Title VII, courts look to federal case law construing Title VII when analyzing FCRA claims. *Speaks v. City of Lakeland*, 315 F. Supp. 2d 1217, 1223 (M.D. Fla. 2004); *Byrd v. Richardson–Greenshields Securities, Inc.*, 552 So.2d 1099, 1102 (Fla.1989).

motion to dismiss in Title VII retaliation case). Defendant's Motion only challenges the first element, protected activity. Thus, any arguments related to the remaining elements that could have been raised by Defendant are waived. However, in an abundance of caution below Plaintiff addresses each element.

### A. <u>Plaintiff Engaged In Protected Activity</u>.

To be sure, statutorily protected activity "is not limited to individuals who have filed formal complaints, but extends as well to those … who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989); *see also Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("[A]n informal complaint may constitute protected activity for purposes of retaliation claims."); *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006) (holding that the plaintiff's reporting to supervisors and executives about a co-worker's alleged harassment constitutes "the very essence of protected activity under Title VII").

In this case Plaintiff alleges that he participated in protected activity when he made allegations of discrimination by his supervisor in November and December of 2019, and on December 30, 2019, participated in Defendant's investigation regarding his claims. (Doc. 12, Amended Complaint, ¶¶ 25-26, 31, 34-35). According to the Eleventh Circuit such allegations satisfy the first prong of Plaintiff's retaliation claim, requiring plaintiff engage in protected activity. *See Gogel v. Kia Motors Mfg. of Ga.*, Inc., 967 F.3d 1121, 1144 (11th Cir. 2020) ("The

making of informal complaints or the use of an internal grievance system is protected conduct under the opposition clause.").

Ignoring the allegations from Plaintiff's well-pleaded Amended Complaint almost entirely (*see, e.g.,* Doc. 12, Amended Complaint, ¶¶ 25-26, 31, 34-35), Defendant's Motion to Dismiss argues Plaintiff somehow failed to engage in protected activity. (*See* Doc. 18, p. 11). But Defendant's Motion completely overlooks Title VII's anti-retaliation provision, 42 U.S.C. § 2000e–3(a), which protects not only those who "participate" in an official Title VII proceeding, but those who "oppose" practices made unlawful by Title VII as well. Section 2000e–3 (a)'s "opposition clause" specifically "protects activity that occurs before the filing of a formal charge with the EEOC, such as submitting an internal complaint of discrimination to an employer, or informally complaining of discrimination to a supervisor." *Muhammad v. Audio Visual Servs. Group*, 380 F. App'x 864, 872 (11th Cir.2010) (distinguishing the "opposition clause" from the "participation clause," which protects activity related to the filing of formal charges with the EEOC); *see also Fuller v. Broward Cnty. Mass Transit (Office of Transp.)*, No. 08–61016, 2009 WL 112851, at *4 (S.D.Fla. Jan.16, 2009) ("[A] claim brought under the opposition clause only requires an employee to voice his concerns to superiors about suspected illegal conduct under Title VII; it does not require the initiation of a Title VII proceeding or investigation.").

In his Amended Complaint, Plaintiff clearly alleges that "...in November and December of 2019, he reported his complaints to his supervisor, Brace, requesting

that Defendant put a stop to DeLorenzo's racist comments and behavior at work....The racial comments became so offensive and so pervasive that in November and December of 2019 Plaintiff began recording by video and audio DeLorenzo's racial comments at work, including at the Amalie Arena where the Tampa Bay Lightning play, during hockey games during the month of December 2019...Based on Distler and NHL Attorney Watson's assertions of protection from anti-retaliation, on December 30, 2019, Plaintiff provided directly to NHL Attorney Watson and Distler six recordings of DeLorenzo's racially discriminatory behavior, all of which occurred during the month of November and December 2019, including his use of the word "nigg**r" along with videos of DeLorenzo making other comments such as "once you go black, you never go back," asking someone if they wanted "head," and that others were "internally retarded" during hockey games at Amalie Arena." (Doc. 12, Amended Complaint, ¶¶ 25-26, 31, 34-35).

As noted above, it is well-settled that reporting discriminatory conduct to one's employer constitutes a protected activity under Title VII, and Plaintiff has specifically stated that he reported his grievances on numerous occasions. *See also Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) ("[W]e recognize that the protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [the plaintiff], who informally voice complaints to their supervisors or who use their employers' internal grievance procedures.").

## 1. Plaintiff had a good-faith, reasonable belief that the conduct he complained about was unlawful.

Defendant's Motion argues that Plaintiff lacks the required subjective and objective good-faith, reasonable belief needed to establish a plausible claim for retaliation. Defendant is wrong as to both.

### a. Plaintiff's belief was "subjectively reasonable."

As a threshold matter, Plaintiff need only "show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, [and] also that his belief was objectively reasonable in light of the facts and record presented." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Thus, Plaintiff does not have to establish that the conduct that he opposed "was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment; such a requirement '[w]ould not only chill the legitimate assertion of employee rights under [Title VII, 1981, and the FCRA] but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances.' " *Id.* (quoting *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) ).

In this Circuit, "[a]n employee engages in protected activity if he opposes an employment practice based on a good faith, reasonable belief that the practice violates Title VII or Section 1981." *Canty v. Fry's Elecs., Inc.*, No. 1:09–cv–3508–WSD, 2012 WL 1038611, at *5 (N.D.Ga. Mar. 27, 2012) (citation omitted) (citing *Bryant v. U.S. Steel Corp.*, 428 Fed.Appx. 895, 898 (11th Cir.2011) (per curiam)

(unpublished)). "The 'opposition' must be made know[n] to the employer in the form of a complaint or some overt rejection of what the employee believes to be an illegally discriminatory practice or decision." *Chandler v. Infinity Ins. Grp.*, No. 2:12–cv–2870–TMP, 2014 WL 2547826, at *12 (N.D.Ala. June 4, 2014); *see also Reynolds v. Golden Corral Corp.*, 106 F.Supp.2d 1243, 1253–54 (M.D.Ala.1999). Thus, an employee may engage in protected activity by "voicing complaints of [racial] discrimination" to his employer, *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n. 2 (11th Cir.2002), as Plaintiff did here repeatedly in November and December of 2019. (Doc. 12, Amended Complaint, ¶¶ 25-26, 31, 34-35).

Contrary to Defendant's Motion to Dismiss, there is no requirement that the discriminatory practice opposed by the plaintiff be directed at the plaintiff himself, *see Tucker v. Talladega* City Schs., 171 Fed.Appx. 289, 295 (11th Cir.2006) (per curiam) (unpublished) (holding that "the claimed retaliation [need not] be directly due to the race of the plaintiff"); *Kendall v. Cobb Cnty.*, Ga., 14 F.Supp.2d 1342, 1346 (N.D.Ga.1998), aff'd by 189 F.3d 486 (11th Cir.1999) (citations omitted). In addition, "[t]o establish 'statutorily protected activity [,]' a plaintiff claiming retaliation for opposing an unlawful employment practice must demonstrate that [ ]he believed, in good faith, that the challenged practice was unlawful and that this subjective belief was objectively reasonable in view of the facts, as measured against existing substantive law." *Sanford v. SCA, Inc.*, Civil Action No. 3:13cv153–MHT, 2014 WL 1329277, at *4 (M.D.Ala. Mar. 28, 2014), adopted at *1 (second

alteration in original) (citing *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir.2010); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir.1999)).

However, also contrary to Defendant's Motion, "the plaintiff 'need not prove the underlying claim of [racial] discrimination which led to [his] protest,' so long as [ ]he had a reasonable good faith belief that the discrimination existed." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir.1989)).

In other words, "the employer's practice, which a plaintiff opposes does not in fact have to be unlawful ... rather, the employee need only have a reasonable belief that the employer's practices are discriminatory." *Danner v. Sumter Cnty. Bd. of Educ.*, No. 712–CV–02391–RDP, 2013 WL 754956, at *4 (N.D.Ala. Feb. 26, 2013) (citations and internal marks omitted). *See also Clover*, 176 F.3d at 1351 (holding that the conduct opposed need only be "**<u>close enough</u>**" to support an objectively reasonable belief of unlawful discrimination); (emphasis added); *Taylor v. Cardiovascular Specialists, P.C.*, 4 F.Supp.3d 1374, 1380–81 (N.D.Ga.2014) (internal marks omitted) (quoting *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir.2002)) ("It is improper to retaliate against anyone for claiming a violation of Title VII [or § 1981] unless that claim is 'completely groundless.' But a groundless claim is one resting on facts that no reasonable person possibly could have construed as a case of discrimination.").

Despite all of this, Defendant argues that "even assuming, arguendo, that Sullivan believed that DeLorenzo's conduct was unacceptable, the FAC has a fatal

flaw, i.e., it does not allege that the conduct Sullivan reported (even arguably) created a hostile work environment for any employee based on his race. (Doc. 18, p. 14). In support of its contention that Plaintiff somehow did not subjectively believe that his conduct was protected under Title VII, Defendant cites the decision in *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997. (Doc. 18, p. 14).

In *Little*, one of plaintiff Bryan Little's co-workers, Willie Wilmot, uttered a racial slur in Little's presence. *See Little*, 103 F.3d at 958. "Little never voiced his concern over Wilmot to a supervisor or management level employee ... and reported the comment for the first time in a team meeting held approximately eight months after the remark was made." *Id.* at 960. Based on these facts, the Eleventh Circuit found "Little's assertion that he reasonably believed Wilmot' comment to be a violation of Title VII ... to be implausible at best." *Id.*

Here, by contrast, Plaintiff complained on multiple occasions in November and December of 2019 about Lorenzo's discriminatory remarks, almost immediately after the comments were made- by reporting them to Distler and Attorney Watson, and by recording the discrimination and turning over the tapes. Thus, particularly at the pleading stage, Plaintiff has sufficiently pleaded he had held a subjective belief that the conduct he opposed was unlawful. (Doc. 12, Amended Complaint, ¶¶ 25-26, 31, 34-35).

### b.     Plaintiff's belief was also "objectively reasonable."

In addition, Plaintiff's Amended Complaint contains ample well-pleaded allegations to support a finding that Plaintiff's belief that he was opposing an unlawful employment practice was also objectively reasonable. Certainly, the facts in the Amended Complaint, accepted as true and viewed in the light most favorable to Plaintiff, would permit a jury to conclude that he had an objectively reasonable belief that Defendant, through Plaintiff's supervisor Brace and DeLorenzo, was engaging in unlawful employment practices, and that he was opposing those practices by participating in the investigation and by turning over the recordings he made. "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

The Supreme Court recently held that "an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation," is protected under the opposition clause of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a). *Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 129 S. Ct. 846, 849 (2009). Thus, Defendant's assertion that "the FAC has a fatal flaw, i.e., it does not allege that the conduct Sullivan reported (even arguably) created a hostile work environment for any employee based on his or her race, is completely without merit. In reaching its conclusion in *Crawford*, the Supreme Court rejected the

argument that such a rule would discourage employers from conducting internal investigations into possible discrimination because the Court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. Boca Raton*, 524 U.S. 775 (1998) give employers an "incentive to enquire" into suspected discrimination. *Crawford*, 129 S.Ct. at 852.

Specifically, "*Ellerth* and *Faragher* hold '[a]n employer ... subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with ... authority over the employee.' " Id. (quoting *Ellerth*, 524 U.S. at 765, and *Faragher*, 524 U.S. at 807) (alteration in *Crawford*). However, "an employer does have a defense '[w]hen no tangible employment action is taken' if it 'exercised reasonable care to prevent and correct promptly any' discriminatory conduct and 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.' " *Id.* (quoting *Ellerth*, 524 U.S. at 765).

As a result, "[e]mployers are thus subject to a strong inducement to ferret out and put a stop to any discriminatory activity in their operations as a way to break the circuit of imputed liability." *Id.* If the law did not protect an employee who responded to an employer's inquiries during such an internal investigation, this would "largely undermine the *Ellerth-Faragher* scheme, along with the statute's 'primary objective' of 'avoid[ing] harm' to employees." *Id.* (quoting *Faragher*, 524 U.S. at 806) (remaining quotations and citations omitted). Moreover, the *Ellerth-Faragher* scheme and Title VII's anti-retaliation objective

would be similarly undermined if an employer could lawfully obstruct an internal investigation into discrimination by preventing an employee, like Plaintiff here, from providing truthful information to an investigator.

Viewed in the light most favorable to Plaintiff, accepted as true the allegations from the Amended Complaint are sufficient to show that Plaintiff had an objectively reasonable belief that his knowledge was relevant to the investigation by Defendant into the discriminatory conduct of his supervisor. Based on these well-pleaded facts, the Court should conclude that Plaintiff's belief that he was opposing an unlawful employment practice was objectively reasonable.

### 2. Defendant's cases are distinguishable.

When challenging Plaintiff's protected activity Defendant's Motion, *see* Doc. 18, pp. 10-17, relies mainly on four readily-distinguishable cases: *Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956 (11th Cir. 1997); *Butler v. Alabama Dep't of Transp.,* 536 F.3d 1209, 1212 (11th Cir. 2008), *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276 (11th Cir. 2018), and *Johnson v. Fam. Prac. & Inj. Ctr., Inc.*, 437 F. Supp. 3d 1108 (M.D. Fla. 2020). But these cases do <u>not</u> support dismissal of Plaintiff's Amended Complaint. (*See* Doc. 18, pp. 10-17). While all four cases admittedly involve Title VII retaliation claims on which the court ultimately found in favor of the defendants, the court did so either on the defendant's motions for summary judgment (*Little*, *Smelter*, and *Johnson*), or even after the conclusion of trial (*Butler*), <u>not</u> at the motion to dismiss stage.

At the motion to dismiss stage, which is where this case is at procedurally, a court only considers the four corners of the complaint, which simply must provide sufficient facts from which the court can reasonably infer the defendant is liable for the retaliatory conduct alleged. *See Iqbal*, 129 S.Ct. at 1949. Accordingly, a plaintiff's burden at the motion to dismiss stage is much different than at summary judgment, and especially at trial. *McArthur v. Northstar Funeral Servs. of Fla., LLC*, No. 10-24517-CIV, 2011 WL 1549007, at *4–5 (S.D. Fla. Apr. 22, 2011)(denying motion to dismiss Title VII retaliation case and disregarding defendant's reliance on summary judgment orders). Thus, none of the core cases cited in Defendant's Motion support dismissal.

In fact, one of the few cases cited in Defendant's Motion that was actually decided at the pleading stage, Judge Bucklew denied a motion to dismiss in a retaliation case. *Baker v. Kelly Smith, LLC*, 977 F.Supp.2d 1231, 1236-37 (M.D. Fla. 2013) (denying motion to dismiss 1981 retaliation claim, but dismissing Section 1981 associational discrimination claim). While Defendant's Motion argues the case is helpful to it because, "the controlling law makes clear that under these circumstances neither Sullivan himself nor any other Caucasian employee could claim that they were unlawfully discriminated against on the basis of their race," Doc. 18, p. 13, this is not a race case. Rather, it is a retaliation case. Thus, *Baker* actually supports Plaintiff's position and warrants denial of Defendant's Motion.

Defendant's reliance on *Jackson v. Deen*, 959 F. Supp. 2d 1346, 1348 (S.D. Ga. 2013) is equally misplaced. *Jackson* does not involve a claim for retaliation. Rather, the sole claims at issue in *Jackson* were sexual harassment and discrimination claims. No such claims exist here.

Defendant also cites to *Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260, 1279 (N.D. Ala. 2012). (Doc. 18, p. 13). But *Cochran* is also readily distinguishable because, unlike here, the central issue as to the retaliation claim in *Cochran* was whether a motion to disqualify counsel constituted an adverse employment action. That is not the issue here. In fact, Defendant has not and cannot dispute that Plaintiff's termination constitutes an adverse employment action. Thus, much like the lion's share of the other cases cited in Defendant's Motion, *Cochran* does not warrant dismissing Plaintiff's well-pleaded Amended Complaint.

Additionally, Defendant attempts to rely on *Wimbley v. Doyon Sec. Servs., LLC*, No. 14-cv-20935, 2014 WL 4376148, at *8 (S.D. Fla. Sep. 3, 2014). Unlike most of the other cases cited in Defendant's Motion, *Wimbley* at least involves a motion to dismiss in a Title VII retaliation claim. But, unlike here, in *Wimbley* the "Plaintiff, as stated in the Amended Complaint, simply never communicated or disclosed to Defendant his opposition to an unlawful discriminatory practice." 2014 WL 4376148, at *8. Thus, unlike the multiple instances of protected activity included in the Amended Complaint when Plaintiff plainly alleges he informed Defendant of race discrimination by his supervisor, *see, e.g.,* Doc. 12, Amended

Complaint, ¶¶ 25-26, 31, 34-35, the *Wimbley* plaintiff's complaint omitted any allegations suggesting he engaged protected activity. In fact, the *Wimbley* plaintiff "stated" he never discloses his complaints to the Defendant. That is the opposite of what happened here: Plaintiff's Amended Complaint repeatedly alleges he engaged in multiple instances of protected activity in November and December of 2019. *Wimbley* is, thus, distinguishable.

**B.**   **Plaintiff Suffered an Adverse Employment Act.**

Termination is a materially adverse employment action. *See, e.g., Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Notably, Defendant has not challenged this element. Plaintiff's Amended Complaint alleges "…on or about February 26, 2020, less than two months after he engaged in protected activity, Defendant terminated Plaintiff for pretextual reasons." (Doc. 12, Amended Complaint, ¶ 42). Thus, Plaintiff has satisfied the second element required for his retaliation claim. *See also London v. Orange Cty., Fla.*, No. 608CV1773ORL35KRS, 2009 WL 10706171, at *5 (M.D. Fla. July 17, 2009).

**C.**   **Plaintiff's Amended Complaint Establishes Causation.**

Finally, Plaintiff's Amended Complaint plausibly alleges sufficient causation. "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.' " *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Defendant's Motion also does not challenge causation.

For example, the Amended Complaint alleges that "...on or about February 26, 2020, less than two months after he engaged in protected activity, Defendant terminated Plaintiff for pretextual reasons. Specifically, Defendant terminated Plaintiff for his alleged involvement in a 2016 group message thread of DeLorenzo's. Defendant did not investigate the text messages of any other Off Ice Officials, other than the Plaintiff and the two other Off Ice Officials that corroborated DeLorenzo and Brace's discriminatory conduct." (Doc. 12, Amended Complaint, ¶¶ 42-44).

Taken together, these allegations tend to show that Plaintiff's complaints to Defendant about DeLorenzo and his termination are not unrelated, such that Plaintiff's claim meets the low threshold required to survive Defendant's motion to dismiss. *See e.g., McArthur v. Northstar Funeral Servs. of Fla*., No. 10-24517-CIV, 2011 WL 1549007, at *5 (S.D. Fla. Apr. 22, 2011); *Luke v. Residential Elevators, Inc.,* No. 4:10-cv-00524-SPM-WCS, 2011 WL 311370, at *3 (N.D. Fla. Jan. 28, 2011).

## III. <u>Conclusion</u>.

Based on the foregoing reasons and authority, Plaintiff respectfully asks that this Honorable Court deny Defendant's Motion.

Dated this 31st day of March, 2021.

Respectfully submitted,

/s/Brandon J. Hill
**BRANDON J. HILL**
Florida Bar Number: 0037061

Direct Dial: 813-337-7992
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
Direct Dial: 813-379-2560
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 31st day of March, 2021, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/Brandon J. Hill
**BRANDON J. HILL**